**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 97-50659

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ACENCION GARCIA,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
(96-CR-127-2)

July 21, 1998

Before POLITZ, Chief Judge, WISDOM and WIENER, Circuit Judges.

PER CURIAM:[*]

In this direct criminal appeal, Defendant-Appellant Acencion Garcia asks us to reverse his conviction by a jury of conspiracy to possess with intent to distribute marijuana, conspiracy to import marijuana, possession with intent to distribute marijuana, and importation of marijuana, in violation of 21 U.S.C. §§ 841, 846, 952 and 963. Garcia assigns as reversible error (1) insufficiency of evidence to prove his knowing possession of marijuana in the

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

back of a truck that he drove, and (2) three rulings by the district court: (a) excluding evidence or explanation to the jury of the absence or flight of Garcia's co-defendants, (b) denial of Garcia's requests for severance; and (c) refusal to exclude impeachment testimony by an agent of the United States Custom Service (the Customs Service) about a post-indictment discussion with Garcia while he was incarcerated pending trial. Additionally, Garcia complains that, even if none of those errors, standing alone, are held to justify reversal, their cumulative effect does. Concluding that, separately or in the aggregate, the errors alleged by Garcia fail to mandate reversal, we affirm.

We have carefully reviewed the record of Garcia's trial, considered the facts revealed thereby and reiterated in the appellate briefs of counsel, analyzed the legal arguments of counsel as set forth in their respective briefs and at oral argument to this panel, and independently researched the law applicable to the issues raised by Garcia. We speculate that it will come as no surprise to defense counsel who vigorously argued Garcia's case on appeal that we now conclude that (1) the evidence and inferences therefrom when viewed in the light most favorable to the jury verdict are more than sufficient to support a finding that Garcia possessed the requisite knowledge of the presence of marijuana in the truck he drove, (2) no plain error resulted from the exclusion of evidence or explanation of Garcia's co-defendants' absences at trial, and (3) the district court did not abuse its discretion in denying severance of trial as requested by Garcia.

And, as that leaves only the evidentiary ruling on the excludability of testimony by the Customs Service agent regarding his jailhouse discussions with Garcia, no error remains with which that ruling can be combined to constitute cumulative error. Under these circumstances, then, we need not and therefore do not write further except in connection with the evidentiary ruling on the availability to the government of the Customs Service agent's testimony to impeach Garcia, if he were to take the stand and if his testimony were to prove inconsistent with the statements he made to the agent.

Garcia filed a motion to suppress the statements he made to Special Agent Alfredo Delgado of the Customs Service while Garcia was incarcerated post-indictment. He grounded his suppression motion in the so-called "plea statement rules," i.e., Fed. R. Evid. 410(4) and Fed. R. Crim. P. 11(e)(6), insisting that the specter of the government's using Delgado's testimony for impeachment purposes chilled Garcia's right and ability fully to present a complete defense within the meaning of the Due Process Clause. In support of suppression, Garcia's trial attorney argued that (1) counsel had been impermissibly deprived of the information regarding Garcia's discussion with Delgado, (2) given that this discussion was held after Garcia had invoked his right to counsel and in fact was being represented, he could not waive his rights under the plea statement rules without, as a minimum, discussing the matter with his attorney, and (3) Garcia's original counsel never granted permission for Delgado to meet with Garcia. The government's

3

opposite position was that Garcia's statement could be used to impeach him if he took the stand and testified inconsistently with his earlier statements because they had not been made in the course of plea bargaining and, in addition, he had knowingly waived presence of counsel and freely and voluntarily initiated and participated in the debriefing.

Following the suppression hearing, the district court ruled against Garcia, specifying that Delgado would be permitted to testify but only as an impeachment witness and then only if Garcia's trial testimony should conflict with his June 1996 statements to Delgado. For whatever reasons, Garcia did not testify.

On appeal, the government supports the district court's ruling, contending that the statements at issue were not made in the course of plea negotiations, so that the plea statement rules are inapplicable; and, alternatively, that even if we conclude that plea negotiations had commenced, Garcia effectively waived his protections under those rules.

Evidentiary rulings in a criminal case are reviewed at a "heightened" abuse of discretion level.[1] Moreover, even if, under such a stringent standard of review, we were to conclude that the trial court's ruling was erroneous, the harmless-error analysis is still applicable.[2]

---

[1] United States v. Carrillo, 20 F.3d 617, 619 (5th Cir.), cert. denied, 513 U.S. 901 (1994).

[2] See Fed. R. Crim. P. 11(h); Fed. R. Evid. 103(a).

4

At the suppression hearing, which was conducted during a recess of the trial, Delgado testified that United States Magistrate Judge Alia Moses Ludlum — then an Assistant U. S. Attorney (AUSA) — had authorized him to speak with the incarcerated Garcia, out of the presence of counsel. Delgado further testified that Garcia had initiated the process when he spoke to a detention center officer concerning a desire to converse with an agent of the Drug Enforcement Administration (DEA) about drug smuggling. This prompted the detention center to contact Delgado. When he learned that Garcia had already been indicted and was represented by counsel, however, Delgado called then-AUSA Ludlum and told her that Garcia wanted to provide information about a load of marijuana that was expected to be moved the next day, and that, although Delgado was represented by counsel, he did not want his attorney present. Given the imminence of the drug transaction about which Garcia wished to talk, Ludlum told Delgado to get the information from Garcia but not to discuss Garcia's criminal charges with him. (Delgado testified unequivocally that he complied with this directive.)

According to Delgado, he then met with Garcia, explaining at the outset that Garcia had a right to have his attorney present. Delgado further informed Garcia that his attorney was being contacted by Ludlum, who would explain the situation to counsel. Garcia responded that he was not pleased with his attorney and that he wanted to help himself. Garcia then disclosed that he was involved in a marijuana-trafficking organization operating between

5

Eagle Pass and Dallas that moved 1000-pound loads twice a week; and he told Delgado the location of stash houses in both cities. According to Delgado, neither he nor Garcia discussed the charges for which Garcia was being detained. Delgado volunteered to Garcia that the information he had supplied would be considered by the government as constituting cooperation, a fact that we note could prove beneficial to Garcia if he were to be sentenced following a trial and conviction, regardless of whether he ever entered into plea discussions or in fact pleaded guilty.

AUSA Bill Baumann testified at the suppression hearing, informing the court that Ludlum told him that she had obtained the approval of Garcia's counsel for agents to speak with Garcia without counsel being present. Additionally, Ludlum had written to Garcia's counsel, explaining the "ground rules" for Garcia's debriefing by Delgado and specifying that, although Garcia's statements would not be used in the government's case-in-chief, they could be used to impeach Garcia if he should testify inconsistently with his statements to Delgado.[3]

Garcia met with Delgado in June 1996. In September, Garcia's attorney moved to suppress any statement, admission, or confession made by Garcia after his arrest, but did not mention Delgado's June debriefing of Garcia. Then, in January 1997, Garcia's lawyer was granted permission to withdraw and a successor attorney was appointed. Garcia's new lawyer did not learn of the June 1996

---

[3] This letter was prepared with blanks for signatures by Garcia and his counsel, but the record copy reflects no signatures of either.

debriefing by Delgado until three days before Garcia's trial.

As the district court failed to articulate findings of fact regarding its suppression ruling, we "independently review the record to determine whether any reasonable view of the evidence supports admissibility."[4] The plea statement provisions of Fed. R. Evid. 410 and Fed. R. Crim. P. 11(e)(6) "are substantively identical."[5]  Although the rules indicate that, for the plea statement protections to apply, the statements at issue must be made in the course of negotiations to "an attorney for the government," principles of agency law may create circumstances in which statements made to law enforcement agents in the course of plea negotiations are protected.[6]  As noted, Garcia's debriefing statements were made to Delgado who testified that he obtained advance authorization to speak with Garcia from Ludlum, the then-AUSA assigned to the case at the time.

Garcia avers that there is no evidence that he waived his plea statement rights under the rules.  He insists therefore that his statements to Delgado should have been ruled inadmissible, even as impeachment evidence, had he chosen to testify on his own behalf.[7]

---

[4]  United States v. Yeagin, 927 F.2d 798, 800 (5th Cir. 1991).

[5]  United State v. Mezzanatto, 513 U.S. 196, 200 (1995).

[6]  2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 410.09[3](2d ed. 1998); see United States v. Brooks, 670 F.2d 625, 628 (5th Cir. 1982).

[7]  At the suppression hearing, Garcia failed to proffer what his testimony would be if he elected to testify at trial.  He now asserts that his failure to do so does not preclude our review of the issue.  The government makes no reference to Garcia's failure to testify at trial or of the absence of proffered testimony at the

The Ludlum letter, as noted, expressed the condition that the government could use Garcia's statements as impeachment evidence if he should testify inconsistently with his earlier statements. Again, the copy of the letter filed in the record does not contain the signatures of Garcia or his counsel; however, AUSA Baumann stated at the suppression hearing that Ludlum told him that she had cleared with Garcia's counsel in Dallas that agents could speak with Garcia without his lawyer being present. Delgado testified that he informed Garcia of the statement by Ludlum that she would contact Garcia's lawyer to explain the situation.

"[A]bsent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable."[8] When signed by counsel and defendant, a letter such as the one sent by Ludlum to Garcia's defense counsel suffices to waive the defendant's rights to the protections offered by the plea statement rules.[9] We have not been called on to apply Mazzanatto to a situation in which a copy of the authorization letter filed in evidence did not reflect whether it had been signed

---

suppression hearing. From the opening statement in defense counsel's appellate brief, however, it appears that Garcia would have testified that he was an unwitting friend helping someone to move furniture — testimony that would conflict with the statements he made to Delgado.

[8] Mazzanatto, 513 U.S. at 210.

[9] See id.; United States v. Maldonado, 38 F.3d 936, 942-43 (7th Cir. 1994), cert. denied, 516 U.S. 876 (1995).

by the defendant or counsel or both.[10]  Signing such a letter is not the exclusive method by which a defendant can waive the protections of the plea statement rules; however, without some kind of valid waiver, "[s]tatements made by a defendant in connection with a plea or an offer to plead . . . may not be used substantively or for impeachment in any civil or criminal proceeding against the person who made the plea or offer," except for statements used in a subsequent prosecution for perjury.[11]

"[N]ot every discussion between an accused and agents for the government is a plea negotiation."[12]  Statements made by a defendant other than in the course of plea negotiations, however, do not come under the ambit of the plea statement rules.

> To determine whether a discussion should be characterized as a plea negotiation and as inadmissible, the trial court should carefully consider the totality of the circumstances.  Thus, each case must turn on its own facts.
>
> . . . .
>
> The trial court must apply a two-tiered analysis and determine, first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and second, whether the accused's expectation was reasonable given the totality of the objective circumstances.[13]

Garcia did not testify at the suppression hearing, and Delgado

---

[10]  See United States v. Tamez-Gonzalez, No. 95-50460, slip op. at 4-5 (5th Cir. Nov. 26, 1996) (unpublished).

[11]  2 Weinstein, supra note 6, § 410.11 (footnote omitted).

[12]  United States v. Robertson, 582 F.2d 1356, 1365 (5th Cir. 1978) (en banc).

[13]  Id. at 1366.

testified that he was unfamiliar with the Ludlum letter. That letter refers to Rule 11, but it also refers to § 1B1.8 of the Sentencing Guidelines, the provision covering the use of information provided by a defendant who agrees to cooperate. Delgado was informed by Garcia that he was unhappy with his attorney and wanted to help himself. Delgado testified at the suppression hearing that he strictly followed Ludlum's instructions? not to discuss Garcia's pending federal charges with him. True, the debriefing between Delgado and Garcia took place after Garcia was indicted, after he exercised his constitutional right to counsel, and after he obtained counsel. And it is also true that post-indictment discussions carry "a strong inference that admissions were made in the course of plea negotiations."[14]

Nevertheless, having considered both the contents of and omissions from the record of the suppression hearing and all other relevant facts and circumstances, as well as the inferences to be drawn therefrom, we conclude that a reasonable view of the district court's suppression ruling is that it includes the implicit finding by the district court that the meeting between Garcia and Delgado did not occur in a plea negotiation setting. Neither Garcia nor the government cites to Robertson and neither argues whether or not Garcia held the subjective belief that plea negotiations were proceeding or, if he did, whether such a belief was reasonable under the circumstances. There is no record evidence contradicting the suppression testimony —— some of which is admittedly hearsay

_____

[14]  2 Weinstein, supra note 6, § 410.09[5].

10

but was not objected to —— to the effect that the AUSA in charge of Garcia's case at the time obtained his counsel's oral consent for Garcia to meet with Delgado out of the presence of counsel. Neither is there evidence contradicting the testimony that Garcia was dissatisfied with counsel, desired to proceed with self-help, and never discussed his own case with Delgado; nor is there anything in the suppression hearing record to contradict the testimony that Garcia initiated the whole process without ever adverting to a plea bargain, either personally or through his counsel.

The suppression record also fails to reflect that the Robertson two-tiered analysis was applied by the district court. Moreover, we would not normally expect to hear that a defense attorney had consented to his indicted and incarcerated client's meeting with a government agent outside the presence of counsel, even when the government has promised that the charges pending against the defendant would not be discussed.

We nevertheless conclude that here the totality of the circumstances weigh more heavily in favor of a conclusion that, irrespective of any silent hopes that Garcia may have harbored for the ultimate help he might achieve for himself, the dialogue he initiated and participated in with Delgado was at most preparatory to any plea negotiations that he might have planned to initiate in the future. As such, the plea statement rules were not applicable and the district court did not abuse its discretion in refusing to prohibit the government's use of testimony by Delgado for the

11

limited purpose of impeachment when and if Garcia should take the stand and give testimony conflicting with the statements he had made to Delgado.

AFFIRMED.